

# In the Missouri Court of Appeals
## Eastern District
### DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED111922 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Knox County |
| vs. | ) | |
| | ) | Honorable Matthew J. Wilson |
| KARLA C. ELLIS, | ) | |
| | ) | |
| Appellant. | ) | FILED: October 1, 2024 |

### Introduction

Karla C. Ellis ("Ellis") appeals from the trial court's judgment following her jury conviction on the class D felony of child abuse. Ellis raises four points on appeal. Ellis first argues the trial court erred in refusing to instruct the jury on Missouri Approved Instructions–Criminal ("MAI–CR") 4th 406.20, justifying the use of force by persons with responsibility for care, discipline, or safety of others. Specifically, Ellis maintains she injected evidence supporting the instruction by testifying that she spanked her three-year-old son ("Child") to prevent him from potentially injuring his sister by throwing a toy at her. Ellis next asserts the trial court plainly erred in admitting hearsay evidence about what Child told the investigating officer ("Sergeant") and Grandmother. Because Ellis did not inject substantial evidence allowing a finding that the force she used on Child was not designed to cause or believed to create a substantial risk of causing serious physical injury or extreme pain, the trial court did not err in refusing to give the justification instruction, and we deny Point One. Because the alleged

hearsay evidence of Child's statements to Sergeant and Grandmother was cumulative to other admissible evidence that Child's injuries were caused by Ellis spanking him with a belt and paddle, Ellis has not demonstrated manifest injustice resulted from the trial court's failure to intervene sua sponte and exclude the evidence. We deny Points Two, Three, and Four. Accordingly, we affirm the trial court's judgment.

Factual and Procedural History

Grandmother was changing Child's diaper in March of 2020 when she observed his buttocks were "very bruised and black and blue." Although Ellis previously had told Grandmother that Child had some bruising on his buttocks, Grandmother became concerned by the bruising she saw. Grandmother talked to Child about how he got the bruises, after which she spoke with her son, Child's Father, and contacted the police. Sergeant determined that, given his training and experience, the pattern and size of the bruising was indicative of child abuse.

Sergeant made a hotline call to the Children's Division and arranged to meet with Victim and Victim's older sister ("Sister"). Sergeant learned from the children that they had been spanked with objects.

Sergeant then visited Ellis's home. Ellis said she knew that Sergeant's visit to the home related to Child's bruising. Ellis denied causing the bruising and further denied knowing who or what caused Child's bruising. Ellis told Sergeant that she had discovered bruises on Child several days earlier when bathing him and that she showed the bruises to her live-in boyfriend. Ellis explained she spanked Child every other day because he was "a bit much" but that Child had no bruises when she last spanked him one week earlier. Ellis said she was certain that she was the last person to have spanked Child. Ellis told Sergeant she would spank Child and Sister with her hand and that she had "a progression of—of instruments she used for the kids." Specifically, she spanked the children with her hand, moved onto using a belt, and then moved

2

onto using a paddle. Ellis told Sergeant she used the paddle the last time she had spanked Child. Ellis denied seeing any bruising from that spanking. When Sergeant asked Ellis whether anyone else might have put the bruises on Child, Ellis suggested that maybe Grandmother could have done so or that Child could have fallen.

While at Ellis's home, Sergeant saw the belt and paddle sitting on the kitchen table. Both the belt and paddle had the children's names written on them. The belt was leather and in two pieces. The paddle was a rough plank of wood. When asked about the children's names on the belt and paddle, Ellis told Sergeant "it was so that they knew what it was for." Both the belt and paddle were photographed and taken into evidence. Based on the photographs, physical evidence, and statements, Sergeant determined Child's bruises were caused by the belt and paddle. Sergeant further found that the extent and nature of the bruising would have caused Child pain and indicated child abuse.

The State charged Ellis with the class D felony of abuse or neglect of a child, Section 568.060,[1] alleging that in March 2020, Ellis knowingly caused Child to suffer physical injury as a result of abuse by hitting the child with a belt and paddle causing bruising to the child's back and buttocks.

The case proceeded to trial, where Ellis testified in her own defense. Ellis denied causing Child's bruising. Ellis testified that she spanked her children regularly with her hand and that there had never been any bruising. The last time Ellis recalled spanking Child was when he "had picked up a decently heavy toy and was getting ready to throw it at [Sister's] head."

Ellis was shown the first photograph showing Child's bruising. Ellis agreed that the extent and nature of the bruising appeared to show serious physical injury to Child. When

---

[1] All Section references are to RSMo (2016).

presented with the second photograph of Child's bruising, Ellis said it "looks like a child fell" and that she could "barely see the bruises." Ellis testified she noticed Child's bruising while giving him a bath several days before the photographs were taken, but did not know the cause of the bruising. Ellis testified she mentioned the bruising to Grandmother because Child was "continuously plopping on his butt" following a leg injury. Ellis later acknowledged in her testimony that the bruising at issue did not look like "plopping on his butt."

At trial, Ellis testified she spanked Child only with her hand and denied spanking Child with a belt or a paddle. Although Ellis denied ever having told Sergeant that she had used the belt or paddle to spank Child, she admitted the belt and paddle were on the kitchen table when Sergeant was at her home. When asked at trial why the children's names were on the belt and paddle, Ellis explained that the children "just started wanting their names on literally everything, whether it was a bottle of water or whatever they could decide; they wanted their names on it. And they had asked me—because they'd always seen me drawing something, and they wanted their names in something pretty." Ellis denied that Child's bruising looked like it matched either object and again denied ever hitting Child with the belt or paddle.

During the jury instruction conference, Ellis proffered a disciplinary justification instruction based on MAI–CR 4th 406.20, which the trial court denied. The jury found Ellis guilty as charged and recommended a sentence of twelve months in the county jail and a monetary fine not to exceed $5,000. The trial court sentenced Ellis as recommended to twelve months in the county jail and imposed a $1,000 fine. This appeal follows.

## Points on Appeal

Ellis raises four points on appeal. Point One argues the trial court erred by refusing to instruct the jury on MAI–CR 4th 406.20, which allows the use of force by persons with responsibility for care, discipline, or safety of others pursuant to Section 563.061. Ellis contends

4

that she injected sufficient evidence supporting the justification instruction when she testified that she spanked Child to prevent him from throwing a toy at Sister. In her remaining points on appeal, Ellis posits the trial court erred in admitting certain hearsay evidence. Specifically, Point Two contends the trial court erred in admitting testimonial hearsay evidence that Child told Sergeant that his bruises were caused by someone hitting him. Ellis reasons that this hearsay testimony went to the ultimate issue of guilt and was admitted without the trial court holding a Section 491.075 reliability hearing. Point Three maintains the trial court erred in admitting testimonial hearsay evidence about what Child told Sergeant in violation of the Confrontation Clause of the Sixth Amendment because Child was not unavailable to testify and Ellis was unable to cross-examine Child. Lastly, Point Four charges the trial court with error in admitting hearsay evidence that Child told Grandmother his bruises were caused by someone hitting him. As in Point Two, Ellis claims the trial court erred in allowing such hearsay testimony without first conducting a Section 491.075 reliability hearing.

## Discussion

### I. Point One—No Substantial Evidence Injecting Disciplinary Justification Defense

In her first point on appeal, Ellis challenges the trial court's refusal to issue the disciplinary justification defense found in MAI–CR 4th 406.20[2] and patterned after Section 563.061.

---

[2] The general instructions for the disciplinary justification defense are as follows:

One of the issues (as to Count _____) (in this case) is whether the use of force by the defendant against [*name of victim*] was to promote the welfare of (a minor) (an incompetent). In this state, the use of force by a person who is entrusted with the care and supervision of (a minor) (an incompetent) is lawful in certain situations.
A (parent) (or) (guardian) (or) (person) entrusted with the care of and supervision of (a minor) (an incompetent) may use force when he reasonably believes that the force used is necessary to promote the welfare of such (minor) (incompetent) (.) (,)
[*Add the following phrase when there is an issue as to whether excessive force was used.*]
provided the force used is not designed to cause or believed to create a substantial risk of causing (death) (or) (serious physical injury) (or) (disfigurement) (or) (extreme pain) (or) (extreme emotional distress).

A.    Standard of Review

We review de novo whether a trial court erred in refusing to give a proffered jury instruction. State v. Straughter, 643 S.W.3d 317, 321 (Mo. banc 2022) (quoting State v. Bruner, 541 S.W.3d 529, 534 (Mo. banc 2018)). In determining whether the trial court erred in not submitting a justification instruction, "we consider the evidence in the light most favorable to the defendant." State v. Jansen, 679 S.W.3d 96, 105 (Mo. App. E.D. 2023) (internal citation omitted). Specifically, we "take[] the defendant's testimony regarding the facts and circumstances of the defense to be true and consider[] whether those facts are legally sufficient to support the instruction." State v. Hurst, 663 S.W.3d 470, 473 (Mo. banc 2023) (internal citation omitted). If we find the trial court erred in refusing the instruction, we will vacate the conviction only if the error resulted in prejudice to the defendant. Straughter, 643 S.W.3d at 321 (internal citation omitted).

B.    Analysis

Section 563.061 permits the use of physical force by the parent (or other person entrusted with the care and supervision of the minor) when the following elements are met:

> (1) The actor reasonably believes that the force used is necessary to promote the welfare of a minor or incompetent person, or, if the actor's responsibility for the minor is for special purposes, to further that special purpose or to maintain reasonable discipline in a school, class or other group; and

> (2) The force used is not designed to cause or believed to create a substantial risk of causing death, serious physical injury, disfigurement, extreme pain or extreme emotional distress.

---

*[Include the following paragraph in ALL cases.]*
As used in this instruction, the term "reasonable belief" means a belief based on reasonable grounds, that is, grounds which could lead a reasonable person in the same situation to the same belief. This depends upon how the facts reasonably appeared. It does not depend upon whether the belief turned out to be true or false.

MAI–CR 4th 406.20.

6

Section 563.061.1(1)–(2).

"In general, a defendant is entitled to a jury instruction when 'substantial evidence and the reasonable inferences drawn therefrom support the theory propounded in the requested instruction.'" Hurst, 663 S.W.3d at 474 (quoting Straughter, 643 S.W.3d at 321). Viewing the evidence in the light most favorable to the defendant, "[s]ubstantial evidence exists if 'there is evidence putting a matter in issue.'" Id. (quoting Bruner, 541 S.W.3d at 535). "If the evidence tends to establish the defendant's theory, or supports differing conclusions, the defendant is entitled to an instruction on it." Id. (internal quotation omitted).

To be entitled to the disciplinary justification instruction, Ellis had the burden of injecting substantial evidence supporting each element of the justification defense at trial. See Section 563.061.6; Hurst, 663 S.W.3d at 474 (internal quotation omitted) ("[T]he defendant will be entitled to an instruction on the defense if it is at least sufficient to permit a reasonable juror to find that each element of the defense has been satisfied."); see also Jansen, 679 S.W.3d at 106 (finding the trial court did not plainly err by not instructing the jury on MAI–CR 4th 406.20 because defendant failed to inject evidence of entrustment). "The Notes on Use for MAI–CR 4th 406.20 provide that if the defendant injects the issue of custodial discipline administered in a reasonable manner, and there is evidence supporting the defense, a justification instruction must be given." State v. Aldana, 681 S.W.3d 586, 597 (Mo. App. W.D. 2023). Importantly, the Notes on Use specify that the use of force "designed to cause or believed to create a substantial risk of causing death, serious physical injury, disfigurement, extreme pain, or extreme emotional distress" is *not* justified under Section 563.061.1. Further, "[i]f the evidence in the case leaves no doubt but that such force was used, then the instruction would not be given as it would not then be supported by the evidence." MAI–CR 4th 406.20 Note on Use 3.

7

To be sure, the evidence presented regarding Ellis's acts of discipline is inconsistent. At trial, Ellis testified that she did not spank Child with a belt or paddle. Ellis testified: "[t]he last time I remember spanking is because [Child] had picked up a decently heavy toy and was getting ready to throw it at [Sister's] head." In fact, Ellis repeatedly denied spanking Child with the paddle or belt bearing his name on that occasion or any other. The circumstances leading Ellis to spank Child, i.e., to stop him from engaging in potentially serious misconduct, reasonably can be deemed evidence adduced in favor of Ellis's proffered disciplinary justification instruction and is evidence that Ellis reasonably believed spanking Child was necessary to promote Child's welfare under Subsection (1) of Section 563.061.1. However, such evidence is but the first step in showing entitlement to the justification instruction. Ellis must still meet the requirements of Subsection (2) of Section 563.061.1 to allow a jury instruction on justification under MAI–CR 4th 406.20. Here, the record includes no testimony or other evidence from Ellis or any other witness suggesting that her intent or mental state when spanking Child was to use force that was ***"not designed to cause or believed to create a substantial risk of causing death, serious physical injury, disfigurement, extreme pain or extreme emotional distress."*** Section 563.061.1(2) (emphasis added). At trial, although Ellis denied knowing how Child acquired the bruises, she nevertheless expressly acknowledged the presence of the substantial bruising and agreed that the nature and extent of the bruising indicated serious physical injury. When reviewing the entire record, we are not persuaded that Ellis's testimony that she did not spank Child with the paddle or belt sufficiently injected the issue of justification under Subsection (2) of Section 563.061.1.

While Ellis's repeated denials of causing Child's bruises weigh heavily against giving a justification defense instruction for her causing the bruises as a disciplinary measure, we

8

acknowledge that inconsistencies in a defendant's defense in some cases nevertheless may allow the trial court to instruct the jury on justification in using force to discipline a child in their care. Hurst, 663 S.W.3d at 474 (internal citation omitted). However, we are not persuaded that the record before us, even acknowledging evidentiary inconsistencies, supports giving the justification instruction. The inconsistency in the evidence results solely from Ellis's repeated denial of having disciplined Child with the wooden paddle or belt. On appeal, Ellis points to Sergeant's testimony as the only evidence connecting her conduct to Child's bruising; specifically, Sergeant's testimony that Ellis admitted having recently spanked Child with the wooden paddle. Ellis testified that Sergeant was lying and that she did not spank Child with the paddle or belt.

Ellis suggests that this Court's holding in State v. Seay, 256 S.W.3d 197 (Mo. App. E.D. 2008) supported the giving of the justification instruction and requires reversal of her conviction. In Seay, this Court found plain error in the trial court's failure to give the justification instruction—even though not requested by the defendant. In Seay, the defendant admitted that he slapped the six-year-old victim's face several times with an open hand from no more than two or three inches away from her face in order to get her attention because she would not eat her sandwich following a history of bad eating habits. Id. at 198–99, 201. The victim testified that the face-slapping hurt, and the physical evidence showed that the victim's face was bruised and swollen. Id. at 201. While the facts in Seay showed physical injury to the child victim, the Court was troubled by the lack of evidence that the force used in Seay was designed to cause extreme pain, as argued by the State. In Seay, the only evidence of force was slapping the victim with an open hand from just a few inches away from her face. While such discipline may very well have been unpleasant for victim, and caused victim some bruising and swelling, this Court

9

held that the totality of the evidence raised some doubt as to whether the force used *was designed* to cause extreme pain as prohibited by Subsection (2) of Section 563.061.1. Id. at 201.

The evidence in this record is significantly distinguishable from Seay. Here, the evidence supports a clear finding that the force used against Child was designed to cause serious physical injury and extreme pain. Again, even Ellis's own trial testimony acknowledged the severity of Child's injuries. Ellis simply denies that she was the person who caused such injuries. See id.; see also Section 563.061.1(2); MAI–CR 4th 406.20 Note on Use 3. Moreover, Sergeant testified that Ellis admitted to him that she spanked Child with "a progression of—of instruments"—from her hand, to the belt, and onto the paddle. Sergeant further testified that he compared the bruising on Child's buttocks to the actual wooden paddle and belt used by Ellis and found the bruising consistent with the paddle and belt, which the jury was also able to assess for itself by comparing the objects to Child's bruising.[3] Unlike the facts in Seay, this evidence irrefutably proves that the actual force used when striking Child's bare buttocks with a wooden plank and belt was designed to cause extreme pain. Such facts would preclude the trial court from giving the proffered justification instruction. See Section 563.061.1(2); MAI–CR 4th 406.20 Note on Use 3. The record lacks any evidence that the disciplinary actions resulting in Child's extensive bruising were not believed or designed to cause serious physical injury or extreme pain. As noted, Ellis had the burden to inject evidence as to *each element of the justification defense* to be entitled to the instruction. See Hurst, 663 S.W.3d at 474 (internal quotation omitted). Ellis testified only as to her reason for disciplining Child. The record contains no evidence *regarding Ellis's belief regarding the consequence of the force used in disciplining Child*. Instead, Ellis denied disciplining Child with the wooden paddle or belt.

---

[3] While the trial testimony refers to the striking instrument as a paddle, a more accurate description is that the instrument was a wooden board or plank.

Ellis's defense strategy, similar to an "all or nothing" defense, precluded the jury from making any findings with regard to her intent when disciplining Child, which is required to inject substantial evidence of Subsection (2) of Section 563.061.1.

Even as we view the evidence favorably to allowing the justification instruction, the record does not support a finding that Ellis injected any evidence that the force used to discipline Child was not designed to cause or believed to create a substantial risk of serious physical injury or extreme pain. See Section 563.061.1(2); MAI–CR 4th 406.20 Note on Use 3. The record contains no evidence that Ellis believed that the manner in which she spanked Child with the wooden paddle or belt was not designed to cause or created a serious risk of causing serious physical injury or extreme pain. Ellis avoided this critical issue by simply denying that she spanked Child with the paddle or belt. By not addressing her belief as to the risk of physical injury and pain associated with the use of such instruments, Ellis failed to inject the issue of justification, and the trial court did not err in declining to give the instruction. See Hurst, 663 S.W.3d at 474 (quoting Straughter, 643 S.W.3d at 321). Point One is denied.

## II.    Points Two, Three, and Four—No Prejudice from Alleged Hearsay Statements

In Points Two, Three, and Four, Ellis raises unpreserved challenges to alleged hearsay testimony from Child.

### A.    Standard of Review

"To preserve an issue for appellate review: (1) the objection must be specific; and (2) the point on appeal must be based upon the same theory." State v. Daniel, 610 S.W.3d 391, 394 (Mo. App. S.D. 2020) (internal citation omitted) (finding a Sixth Amendment right-to-confrontation claim was not preserved by an objection solely on hearsay grounds). Ellis acknowledges that she did not object on hearsay grounds or on the issue of confrontation to any

11

of the challenged evidence when it was elicited at trial and requests we exercise our discretion to grant Rule 30.20[4] plain-error review.

"Unpreserved issues can only be reviewed for plain error, which requires a finding that manifest injustice or a miscarriage of justice has resulted from the trial court error." State v. Brandolese, 601 S.W.3d 519, 534 (Mo. banc 2020) (applying plain-error review to the admission without defense objection of alleged hearsay testimony). "To obtain a new trial on direct appeal based on a claim of plain error, the appellant must show 'the error was outcome determinative.'" State v. Stevens, 684 S.W.3d 379, 383 (Mo. App. E.D. 2024) (quoting State v. Minor, 648 S.W.3d 721, 731 (Mo. banc 2022)).

B.    Analysis

Although hearsay statements are generally inadmissible, "[t]he out-of-court statements of a child are admissible in a criminal trial under Section 491.075.1 as substantive evidence to prove the truth of the matter asserted if, among other things, the court finds after a hearing that 'the time, content and circumstances of the statement provide sufficient indicia of reliability.'" State v. Jones, 596 S.W.3d 168, 171 (Mo. App. E.D. 2020) (quoting Section 491.075.1(1)). "The reliability of a child's statement is determined by looking at the totality of the circumstances as set out in the evidence presented at the 491 hearing." Id. (internal citation omitted). "Section 491.075 'reflects a policy determination that in some child abuse cases the victim's out-of-court statements may possess sufficient probative value to contribute to the judicative process[.]'" State v. Tanner, 220 S.W.3d 880, 885 (Mo. App. S.D. 2007) (quoting State v. Wright, 751 S.W.2d 48, 52 (Mo. banc 1988)).

---

[4] All Rule references are to Mo. R. Crim. P. (2024), unless otherwise noted.

12

Ellis alerts this Court that no Section 491.075 hearing was conducted in this child-abuse case. "Section 491.075 is implicated only when timely objections to the admissibility of a child's statement are made on proper legal ground." State v. Schuster, 92 S.W.3d 816, 820 (Mo. App. S.D. 2003) (internal citation omitted). Failure to conduct a Section 491.075 hearing does not amount to plain error if the hearsay evidence is offered without objection. State v. Hannon, 398 S.W.3d 108, 118 (Mo. App. E.D. 2013) (citing State v. Brown, 912 S.W.2d 643, 645 (Mo. App. W.D. 1995)); Schuster, 92 S.W.3d at 820 (internal citation omitted). Despite Ellis not objecting at the moment the State elicited the challenged testimony, Ellis earlier successfully objected to the State's direct questioning of Sergeant about what Child told him. In that objection, which the trial court sustained, Ellis reminded the trial court of her pre-trial motion in limine raising the issue of a lack of a Section 491.075 hearing. "Once the issue of admissibility is raised by timely objection, it is then incumbent on the trial court to make the determinations required by Section 491.075." Schuster (internal citation omitted).

We are troubled by the lack of a pre-trial Section 491.075 hearing or any explanation in the record as to why the trial court did not conduct a pre-trial Section 491.075 hearing. Equally troubling is the State's conduct in moving forward with the prosecution without pursuing a pre-trial Section 491.075 hearing when the alleged hearsay statements of what Child told Sergeant and Grandmother about the cause of his bruising may have gone to the ultimate issue. Section 491.075 sets forth a process by which Child's testimony could have been properly admitted, and we question why such a reliability hearing was not held in this case.

However, while Ellis correctly emphasizes the irregularity in the absence of a Section 491.075 hearing, Ellis has not shown the trial court's error rises to the level of manifest injustice or a miscarriage of justice warranting reversal. See Brandolese, 601 S.W.3d at 534.

13

"An allegedly wrongful admission of hearsay testimony does not constitute plain error if such testimony is merely cumulative to other evidence properly admitted." State v. Stanley, 609 S.W.3d 903, 915 (Mo. App. W.D. 2020) (quoting State v. Lucio, 247 S.W.3d 131, 135 (Mo. App. S.D. 2008)). "Quite simply, evidence that is cumulative of other, properly admitted evidence cannot have contributed to a defendant's conviction and is harmless beyond a reasonable doubt." State v. Garner, 670 S.W.3d 262, 266 (Mo. App. E.D. 2023) (citing Brandolese, 601 S.W.3d at 536).

Regarding the challenged hearsay statements, Sergeant testified that he learned from conversation with the children that Child had been spanked with objects, and then he proceeded to make a hotline call to the Children's Division and visit Ellis's home. Grandmother testified that she observed Child's bruises, asked how Child got the bruising, and determined that "somebody [had] do[ne] that to him." Grandmother then immediately proceeded to contact Child's father and the sheriff's office.

Assuming *arguendo* the challenged statements were inadmissible testimonial hearsay, we find Sergeant's and Grandmother's statements were merely cumulative to other admissible evidence that Child's injuries were caused by being spanked with a wooden paddle and belt by Ellis. See id. (citing Brandolese, 601 S.W.3d at 536); Stanley, 609 S.W.3d at 915 (quoting Lucio, 247 S.W.3d at 135). Namely, the jury was presented with the following evidence: Sergeant's testimony that Ellis told him she routinely spanked Child with a belt and paddle and that she was the last person to have spanked Child; Ellis's testimony that she regularly spanked Child; Sergeant's testimony that he saw the belt and paddle sitting on the kitchen table; the seized belt and paddle with Child's name on them; and the photographs of Child's bruises that, alongside the seized items, visually depicted how the belt and paddle aligned with Child's

14

injuries; Sergeant's testimony in comparing the wooden paddle and belt to both the photographs of the bruising and the actual bruising on Child's buttocks. The cumulative nature of the challenged hearsay evidence to the other substantial evidence supporting the jury verdict precludes a finding that Ellis has suffered the requisite manifest injustice or miscarriage of justice to prevail on her claims. See Brandolese, 601 S.W.3d at 534, 536.

However, we caution the State that our holding is not for lack of trial court error—but only that any such error is held harmless due to the particular facts before us. In particular, but for Sergeant's testimony regarding Ellis's admissions and his testimony regarding the comparison of the wooden paddle and belt to the bruising on the buttocks, we may very well have been in a position of having to reverse this conviction. The alleged error in permitting Sergeant's testimony "about what he learned from other persons" invokes both evidentiary and constitutional principles that promote due process and fairness in the State's prosecution of a defendant. Section 491.075 was enacted to balance the competing due-process protections of the defendant with the unique situation of dealing with young or otherwise vulnerable witnesses. We advise careful compliance with Section 491.075 by conducting a hearing regarding the admissibility and reliability of a child's out-of-court statements that may be probative of elements necessary to proving the State's case. Points Two, Three, and Four are denied.

### Conclusion

The judgment of the trial court is affirmed.

_____
KURT S. ODENWALD, Judge

Lisa P. Page, P.J., concurs.
Rebeca Navarro-McKelvey, J.,concurs.

15